4100733. Counsel, please. Thank you, Your Honor. I may please the court, counsel. My name is Doug McCarthy, and I represent the defendant, appellant in this case, Connie Copeland. The more I read the transcript and the case law, the more convinced I am that the Workers' Compensation Commission did the right thing in this case. This is a case where you have a woman who was at work doing her job, and she fell. She's testified many, many times in the record that she does not know why she fell, and there are no eyewitnesses that testified either. So you have a classic case of an unexplained fall. What the commission was to do, based on the law that's come out of the appellate court over the years, and that's been as far back as the cease case, which is as far back as I went, the court has interpreted these cases, I think, the same way. The wording is a little different, but the interpretation has always been the same. What the commission had to do was follow that interpretation and make their decision. They looked at the evidence and they made reasonable inferences from that evidence. They drew three reasonable inferences, which resulted in a finding that because of those factors, there was an increased risk of injury to Connie Copeland that day over the risk to just a member of the general public. And that's the test on an unexplained fall. It was the test before first cash, and it's been the test after first cash. Three factors. The first one, and they did it in order of importance, I think. Their decision, they first dealt with the fact that right before she fell, she was busy and in a hurry on a very busy day. She's a respiratory therapist working at the hospital. She worked there 26 years. She's working that day on the intensive care unit floor for pediatric patients. It was a busy season. There was a virus, and that brought in a full floor of pediatric patients. Joyce Hiley, our co-worker, said based on the staffing, she saw that day that the floor was very busy. It's 1130. She had given treatments to several of the people in the room, and she wanted to get three more treatments done on that floor and then do another one somewhere else in the hospital before noon. That was her testimony. Counsel, just to clarify, the only issue and dispute here between you and opposing counsel is the rising audit issue, correct? Yes, Your Honor. Did the claimant ever testify that she knew specifically why she fell? No, she did not. Yes, Your Honor. Did they base the decision on this alleged dip in the floor? Is that part of this, or not really? That was the third thing that they mentioned, and they mentioned it only in one sentence. They mentioned it after they talked about the Nabisco case, and they said that this case is even stronger because the floor was either a defect or it was wet. That's all they said about that. But you're not saying it really doesn't stand or fall on the condition of the floor, does it? Not at all. In fact, I think under the facts of this case, it doesn't matter how she fell. What matters is why. She could have tripped over her own two feet, and for all we know that might have happened, and it still would be a compensable case. And I think that's what the commission ruled. They didn't really talk about the defects or dips. Clearly she was busy, trying to get her work done before noon, and they found reasonably inferred that those two things were the facts. She was busy, she was hurried. Second thing they reasonably inferred was that she was distracted. She was looking at her cards. That was her testimony. And those cards were what she said were the think tank for her as she did her job. They had the name of the pediatric patient and what medicines the pediatric patient had obtained. She just finished a treatment in one room, and she's heading down the hall to get medication because she didn't take all the medication with her. She had to go get medicines after each treatment. So it's entirely reasonable and probable that the commission would conclude, given the fact that she had three more to do on that floor, and she was looking at her cards, that she was reading them. It's not at all a reasonable inference to conclude that the cards were down at her side. Why would she be looking at them if they were down at her side? She's looking at them because she needs to know what she has to give the next pediatric patient and who that pediatric patient is. Those are the two things that the commission really relied on in their decision. And we think that their decision is supported by reasonable inferences, and we think it's in line with the earlier cases that this court has decided. It's very much like the cease case. The cease case, the woman was leaving work, going down the stairs. Nobody saw her go down the stairs. They saw her at the bottom after she'd fallen. She never testified why she fell. No one, no eyewitnesses. But the commission and the court found that based upon the facts, she was in a hurry. The facts were there where she was carrying the FedEx packages, and it was part of her job to get those mailed by the end of the day. It's also a lot like the Knox County YMCA case, where you have a woman who was going either upstairs or downstairs with items in her hand that were related to her job. She missed a step. The commission found and the court affirmed that had she not had these things in her hands, she could have grabbed a railing and broken her fall. It's a lot like the Nascote case, where the woman had to step up and down off of a bumper many times during the day. The increased number of times stepping up and down increased the risk that she was going to turn her ankle. The analysis that you used in First Cash and later in Baldwin is the same analysis that you used in Cease. The difference is, in First Cash, the lady presented no evidence to show that the bathroom floor was dirty on the day that she fell. In reading that decision, I think if you had some evidence before you that showed the condition of that floor and that there was a problem on the day that she fell, the commission probably would have been affirmed. In the Baldwin case, same thing. Baldwin case, we have a fall on stairs. No evidence that she was in a hurry. No evidence there was a defect in the stairs. No evidence that she was busy. There was no evidence to support a reasonable inference. And they were clear, and the commission did a good job of explaining why those inferences were present, and as I said, increased the risk of her falling. I'm not sure how the case they cited applies to this Nascote case, but the reasoning before that I think was accurate. Circuit Court, I think, mainly just did what they're not supposed to do, and that is substitute its inferences for that of the commission. Circuit Court said in its opinion that she denied that she was distracted. There's no evidence in the record that she denied that she was distracted. They said that the court opinion said she denied she was in a hurry. Never denied she was in a hurry. I didn't ask her that question. I probably should have, but I think under the facts of the case, the commission raised that inference. Thank you, counsel. Counsel, please. Thank you, counsel. My name is Julie Garrison, and I represent Decatur Memorial Hospital. I think we're saying that it's very hard to defend this commission's decision. They're all over the place. They're inconsistent in their analysis as regards the four possible options for a causation relationship that the petitioner put forth. And their decision declares that they are making reasonable inferences about matters that the petitioner's own testimony is in conflict with. It's indirect. She directly contradicts what they conclude. We see that she repeatedly admitted that she did not know why she fell. It's not just her testimony. That's in the emergency room records, other contemporaneous medical records, also in the accident report. Well, let me stop there. Does she need to know why she fell? No, she doesn't need to know. I mean, it's an unexplained fall, but I think what's important about that is she is an honest, trustworthy witness. So if her testimony, and I think she's answering the questions that are asked of her, and if her testimony contradicts what the commission says they're reasonably inferring, and they use that language in their decision on two occasions, if that's in direct conflict with what she's testifying, that's a red flag. That's why I think the circuit court looked back at all these possible options and said, well, what's the evidence? The first cash case, I mean, other cases, I think they are consistent, as my opponent said. And here we have, if you look at what the, I think it's on page 9 and 10 of my initial brief, the first cash sets forth the analysis that's used in these unexplained fall cases. And they say that if there's no direct evidence, there's just circumstantial evidence, it can only support an inference that's reasonable and probable, not merely possible. And they further say if it's at least equally possible to infer that something was not the cause, then that's impermissible. That's speculation. So I think it's interesting that the commission, in their decision, does away with the possible cause there being an obstruction in the hallway. The arbitrator had said, well, it was permissible to infer that that was part of the reason or possible cause. Let's leave that aside for the moment, because as you indicated, she did testify, as I recall, that she wasn't sure exactly why she fell. There was some evidence in the record of dips, but the claimant didn't testify, as I recall, that she fell because she tripped on something and there was a dip. Right, she denied that. She denied tripping. She denied slipping. The commission finds that the claimant fell while performing a work-related task, hurriedly walking down a hospital corridor if she reviewed patient treatment notes, which is part of what she does on the job. On that basis, why isn't that sufficient to make this a compensable injury? Here's why. Because the analysis that the commission is using, and it comes from the first CASH case, is there's no evidence or witness testimony that a particular option contributed to her fall. And as there was no evidence or witness testimony that any obstruction in the hallway contributed to her fall, as there was no evidence or witness testimony that there was any wetness or slipperiness on the surface of the floor. Well, why does it have to be a defect for her to be? Why does it have to be a physical defect? I see what you're saying, but I think we're overlooking the fact that the evidence establishes that reading and reviewing these notes, as she's going from one station to the next, is part and parcel of her job. I might be inclined to agree with you if she's just standing there and she just topples over. You seem to be separating the reading of the notes and hurrying to complete her job is sort of irrelevant here. And I think that's what the commission hung its head on, if you will. Well, if you read from her testimony here, she's describing her routine. She's being asked about what did she do on that day. She's on her second routine of coming back to do treatments on the pediatric floor. So then I came back on the pediatric floor about 11 a.m. And I was trying to get things done before 12. Because I do believe I had something else on another floor. I tried to get the peds done first. I was going to the other floor and trying to get that done before lunch. She never says, she never testifies. I was in a hurry. And correct me if I'm wrong, but I don't believe she ever testified as to how many more treatments she had to do before that time. And Joyce Hiley is saying, well, she's the witness. Well, you know, it was busy and it was a busy time of day and a busy time of year. But she was saying, you know, we were busy doing particular patient care. But Joyce Hiley, at the time the petitioner fell, she was in the staffing area like doing computer charting. I think she, if you examine her testimony, she said, number one, she was quite busy. Number two, that when she left the room, she was looking at her cards while she was walking and then she was on the ground. Well, I think that the allegation that she was hurrying and carrying her cards was something that came from another nurse saying, oh, I'll just do a treatment for you because I know you're in a hurry or in a rush. But I don't believe that she ever said, I was hurrying, I was in a rush. She never said that she was distracted. She didn't use the words. But can't the commission, isn't the commission entitled to draw reasonable inferences from the testimony and the evidence? Well, they are. That's the issue, is whether the inferences that they drew were reasonable. And here we have them saying, well, it's not reasonable if there's no evidence or witness testimony that these factors contribute to the fall, whether it's the obstruction in the hallway or wetness on the floor or any defect in the floor. But it's even more speculative for her to be distracted or to be hurrying when she directly doesn't testify to that. So the commission is reaching, making inferences that are not supported by even her own testimony. And I think that the analysis of first cash is very compelling here because it's all speculation. She doesn't know. She says, you know, and it's also the same analysis that this court highlighted in the Baldwin case where, well, I might, you know, in fact, that was even more possible in the Baldwin case. She says, you know what, I had just walked through the freezer and maybe there was some moisture on my foot. But the court correctly concluded that's just speculative. That's not sufficient. It's not reasonable to infer that that was the case, that that contributed to her fall. I think similarly here, she doesn't say, you know what, I was in such a hurry. I was rushing. I was looking at my cards. She doesn't make that connection. And so for the commission to make that connection is not reasonable. And that's what the circuit court did. It applied the same analysis consistently to the four possible options that the petitioner offered for compensability here. I do want to say one thing about the first cash case. There was very similar evidence presented by the claimant in that case. She, you know, the testimony was that at times there was debris, there were wet spots in the area where she fell. And that's precisely what we had here, the same kind of evidence and the same analysis should apply. I think the last thing I want to highlight, and I think the Baldwin case is illustrative here. That was the case where they said, you know, there's one, maybe something, maybe there was moisture on my foot. Maybe that's why I fell. Here, there's kind of a laundry list. And the commission says, well, you know, could have been this, could have been that. Oh, it's not this. But it makes it just even that much more speculative. And I think that we would ask that the court make that same analysis and affirm the circuit court's reversal here. Thank you, counsel. Rebuttal, please. On the issue of what else she had to do that morning, I would refer the court to records pages 226 and 227. I had asked her when the accident happened, she said 1130. I came out of that room approximately at 1130, at least to the best of my recollection. Were you going somewhere else, you said, about noon. She said, I wanted to get these treatments done on Pibbs. I think I still had maybe one other treatment to do somewhere else. How many more treatments do you think you had to do on Pibbs in that half hour? Probably three. I'd already been there. I'd already done some. There are some rooms across the hallway that have Pibbs patients. I'd already done some treatment over there. So I think that's sufficient to show that she had three more treatments to do. It's certainly sufficient to show that she had a lot to do in a half hour. In the first cash case, we talked about reasonable inferences. Reasonable inferences are those that are reasonable and probable, and more likely than the opposite inference. The inferences that the commission drew that she was busy and in a hurry are certainly more likely from this evidence than the inference that she wasn't. The inferences that the commission made that she was distracted by looking at those cards, having to know what patients needed what, is a lot more reasonable and probable than the inference that she wasn't looking at the cards. In fact, she said she was looking at the cards. It's not an idiopathic fall. She wasn't engaged in horseplay. We think that based on the decisions of the other cases that I've cited that the commission's decision should be reinstated. Thank you.